We'll hear argument next in Fathauer v. United States, Appeal 51-12 from 2008. Kahern, as soon as you can be ready, we'd like to proceed. May it please the Court, I'd like to summarize the six principal errors in the Court of Federal Claims decision. First, there is no ambiguity in the statute. Even the Comptroller General acknowledged that Public Law 8954, the literal language, does not restrict the benefits in question. Suppose there were committee reports that said we are using employee in the statute in the sense of full-time employees and we do not intend to cover part-time employees. There is nothing that says that. Yes, I understand. I know the legislative history. I've read it. Okay, then I misheard your question. The hypothetical is suppose the committee reports said we do not intend that part-time employees get compensated for Sunday work. This statute does not cover them. Okay? Okay. I would argue, applying the rules of statutory construction and Chevron, that you first look at the statute, and the statute is unambiguous, and I believe it is unambiguous in this case. Even with that legislative history, you would still say that part-time employees are covered. One does not look to the legislative history to find an ambiguity in the statute. You have to first find an ambiguity. The answer is, even with that legislative history, you say the statute is still unambiguous and covers you. Yes. You say more than that. You say that it would be impermissible to even look at the committee report or other form of legislative history if, on its face, the statute didn't reveal an ambiguity. That's my understanding of the law, of statutory construction. What's your authority for that? I thought the law was to the contrary, that as a part of deciding whether there's ambiguity in a phrase, you look for underlying materials to confirm your suspicion that it's unambiguous, but you have to test it. You can't just look at the face of the statute and then refuse to look at anything else to test your working hypothesis. Okay. I don't have a citation to that off the top of my head. It might be in Butterbaugh. We'll check. But I am confident that I've read somewhere that you cannot go external to find the ambiguity. It has to be in the text itself or the statute. And what case says that the term employee is unambiguous? The statute itself says it's unambiguous. The statute defines employee both for the purposes of the subchapter, pertaining to premium pay, and for Title V as a whole. Well, it looks to me like all it does is make a distinction between normal executive branch hirees and those who work for agencies like the Tennessee Valley Authority that are not properly considered part of the executive branch. And it plainly doesn't, anywhere in its definition, address distinctions between part-time, full-time, intermittent, permanent, et cetera. Well, that's because... It looks to me like the definition is simply meant to fence out certain people who get paid by taxpayer dollars but aren't hired by the executive branch. Okay. The answer to that is, I have three points to the answer to that. One, when Congress uses a board phrase, it's presumed that no exceptions are intended. Secondly, the statute itself, the 5546A, does speak in terms of what kind of work schedule you have to have, what employees have to have to have premium pay. I'm talking about the definition that's in 41. It doesn't address anything relating remotely to full-time versus part-time. It just fences out people not in the executive branch, postal employees, TVA. That's because it was intended to cover everybody. When Congress wanted to exclude certain people from certain premium pay statutes... You're asking us to assume the result. You're saying Congress intended to include everybody. That's the issue in this case. Did they intend to include part-time people as part of everybody or did they intend to include only full-time people? That's the question in the case. We can't start out by assuming your preferred answer to that question. One can by referring to the 65 statute where Congress specifically excluded substitute employees from certain entitlements. As an indication that when Congress intends to exclude certain classes of employees, it says so. So you're saying Judge Dykert, you wouldn't acknowledge that you look to legislative history to determine whether it's ambiguous, but you're telling us now you look to other statutes to determine whether or not the phrase is ambiguous? No, I don't think you need to go that far, but that is a tool of statutory construction to go to another statute. But what I think is more important is in the language of 5546A itself. It tells us what kind of employees are entitled to it and those who have a regularly scheduled tour of duty on a Sunday. It does limit the kind of work schedule or the schedule to which an employee would be entitled to it. Under your construction of the statute, a temporary hire, somebody hired for 30 days, would be entitled to Sunday premium pay? If they had a regular work schedule that involved work on Sunday. You don't think that sounds like a stretch? No. You think it would have been logical for Congress to want to give the same Sunday premium to somebody hired just for 30 days as to someone employed for years and years and years, either full-time or part-time? They do that in the case of the other forms of premium pay. That raises a strong argument on our standpoint. There are numerous forms of premium pay in the subchapter, and part-time employees get every other one of them. Why is it that Congress would want to exclude part-time employees for the regular work schedule from Sunday premium pay but include them for night differential, for holiday pay, for hazardous duty pay? How would we know? How could we possibly fathom why Congress would want to do something or not do something? Because one presumes when Congress uses the same phraseology, it intends the same result. That's a pretty shaky read. Lots of examples where they obviously meant something different, but they used the same language because they don't observe uniform terminology from bill to bill and year to year and Congress to Congress. So it's asking a lot to say there's a rigid requirement that the same word always has the same meaning regardless of what statute it's in or what the context is. Well, I believe the court's question was why would they want to give it to part-time or temporary employees for the same reason they gave every other one to them. This is not an unusual circumstance for part-time regular employees to ask for Sunday premium pay because they get everything else. And that was one of the principal errors of the Court of Federal Claims decision by saying that, quote, Congress limited the availability of benefits like premium pay to those who work more than 40 hours a week. That is absolutely no basis. We know that... What about the terminology regularly scheduled? If you say the term employee is plain on its face and not subject to construction, what about the terminology regularly scheduled? Suppose we had a legislative history that said when we talk about regularly scheduled, we mean people who work a 40-hour week. Would you win or lose? You'd lose. Come on. For the term regularly scheduled, that's perhaps more of a term of art, but I don't think we have any legislative history that says that. No, it was a hypothetical question. But if accepting the hypothetical, your answer would be yes. My question would be why didn't Congress just didn't say that in the statute? Why use a confusing term that has another meaning? But, you see, if you look at the legislative history in the Senate report on page 4, it says this section requires a premium of 25% of base pay for an employee whose rarely scheduled five-day work week includes Sunday. So it sounds as though when the statute is talking about rarely scheduled,  those words are only words of illustration, not words of limitation. If those were words of limitation, would you lose? As I said, if it should be only to employees who have a five-day work schedule. Rarely scheduled five-day work week. It doesn't say that that's to only those people. I understand that. If it did say, if we interpret that as meaning only, do you lose? My case would not be as strong. I just think there's a lot of risk in reading in a legislative committee report when Congress gives an illustration of how a law would apply to read that as the words of limitation or the exclusive way in which it would be applied. But you've also got another statutory provision that explicitly says parenthetically after the use of the word employee, full-time, part-time, and intermittent. So how would you explain under your unambiguous reading the necessity, Congress defining it? Well, firstly, if full-time, part-time, and intermittent, are those the only three classes or is something left out then? I don't even think that intermittent is one that's commonly used anymore. I think it's referred to as not to exceed employee. I'm not even sure that that intermittent is a current term of art in civil service parlance. So if we're just looking at the statute, not the legislative history, nothing else, isn't there enough ambiguity created in the word employee where Congress chose in one section to be silent and another section to describe what they meant parenthetically? The answer to that is more complex than it would appear on the surface. That language was added in 1971, I believe, because... Yeah, but now you're pointing us towards the legislative history and I thought we were in the business of looking at the statute and deciding whether on its face... Well, then on its face, when it says full-time, part-time, or intermittent, it clearly shows that those are subsets of a class of employee. Employee does include part-time. In that section, but it doesn't have the same parenthetical in the section you're asking us to construe here. Well, what is curious is that one would need to look at how that phrase got into the statute in 1971, well after this law was enacted. But the more important thing, we think, is that throughout every one of these subchapters, every one of these subsections in the premium pay subchapter, Congress and OPM and everybody pays part-time employees those benefits, those premium pay. They get night differential, they get holiday pay, they get hazardous pay, they get overtime. The Court of Federal Claims referred to the 1949 or 1948 statute that gave only part-time employees who worked five days a week annual and sick leave benefits. But what the court did not remember was that in 1951, the annual and sick leave act gave all part-time employees who have a regular schedule, the benefits of sick and annual leave. So the clear consistency from 1945 going to the forward is Congress did include part-time employees who have regular work schedules with everything except that we have this one outlier section based on a controller general sloppy misreading of the Postal Service Act. What about the fact that the OPM many, many years later, I guess in the mid-90s, issued a regulation through the formal process which qualified the word employee by inserting before that word the word full-time. Why shouldn't that regulatory issuance be regarded as a separate and independent act of OPM based on OPM's assessment of the relevant statutory and other materials rather than the ongoing dead hand of the past of this old controller general opinion I guess from the 70s? The answer to that is simple. When OPM added it, they said it was relying on the past controller general's decision. I didn't read it as only relying on that. They cited that, but they seemed to take the view that they thought it was accurate as opposed to the view that we think it's dead wrong, but we're not allowed to change it because we work for him. We're his subordinates, so we have to agree. It's clear that that change to the regulation was an afterthought. As the 1995 regulation was originally proposed, it did not have the words of limitation. Well, I don't care whether it was an afterthought or not. The point I'm trying to get you to address is it seemed to have been a deliberate decision of OPM based on OPM's assessment. The only rationale it offered was A, this is what the controller general decided years ago, and B, we've been doing it this way for a long time. There was no independent assessment, no policy choice expressed rationality. Well, when they say we've been doing it this way for a long time, doesn't that imply, and we think it's right and that's why we still are doing it that way? One cannot read, a court cannot even under Chevron approve an administrative determination reading the statute just based on an implication. Agency's decisions can only be upheld on the basis of its expressed rationale. The court cannot supply, but through application or otherwise, to try to think what the agency might have been thinking. And the only time OPM has ever expressed itself- Isn't it clear that OPM had authority when it issued this reg to ignore the controller general's opinion because it is not then a subordinate of the controller general. Yes. And so it had the authority to ignore him, but it chose not to ignore him, which to me necessarily suggests that they agreed with the correctness of his view. If one were to assume that, then one is assuming that- I'm not assuming it, I'm deducing it because it seems to me there's no other logical way to read it. Then the OPM would be deferring to the controller general's interpretation of the legislative history. And be it the controller general's or OPM's interpretation of the legislative history is not due Chevron deference. Only policy choices that an agency makes in furtherance of execution of a statute is entitled to Chevron deference. Congress does not delegate to administrative agencies the role of reading legislative history. Under your view of Chevron, unless the agency says we're making a policy choice, they get no Chevron deference. I don't think you can find any cases to support that. Well, I think that we have cited- Well, Chevron itself speaks only in terms of the policy choices as a rationale for Chevron deference. The reason that administrative agencies are given deference is to make policy choices because they have the expertise to do so. And this court's decisions are very clear that reading a legislative history to determine the congressional intent is something one does to determine whether or not to give Chevron deference. That remains the judicial function. I know of no- I'm not saying there isn't any out there, but I know of no authority that says one gives to an administrative agency deference in their reading of congressional intent or legislative history. All right, we've given you some extra time and we'll restore your rebuttal time. Let's hear from the government. May it please the court, we respectfully request that this court affirm the decision in the Court of Federal Claims. Don't we have to assume that Congress acts rationally with respect to various premium pay entitlements? I think assuming that Congress acts rationally is, yes, something we should do. Now, if Congress acts rationally, doesn't it have to act consistently and therefore if there's no meaningful difference between premium pay for holiday work versus premium pay for Sunday work, that the same benefits should flow to Sunday workers as holiday workers? If this court were Congress, we might be able to make that decision. However, Congress is- No, no, the question is, if the two things are analogous, you would expect them to be treated the same way, either premium pay for neither Sundays nor holidays or premium pay for both Sundays and holidays, unless there's some important difference that would justify different treatment. So the question is, what's the important difference that you can cite between premium pay for holiday work versus premium pay for Sunday work? The first difference would be the fact that holiday work arose under the Federal Employees Act of 1945 and Sunday pay didn't come in until 1966. So what? Two different Congresses not exactly using the same words and the same terminologies all the time in the legislative history bears out that there was an intent for a different treatment. What? I didn't see that. We've got a statute with several sections, and all of these use the same word, employee. So we're to use the fact that different portions of the section were enacted at different times to influence how we construe the terms? If we're talking about the term employee, I would respectfully suggest to the court that we not focus in that area. Plaintiffs have rested their case. We not focus on what area? On the area of employee? The term employee, that the answer to the question that the plaintiffs have put to this court and the trial court lies exclusively within the meaning of the term employee. Okay, well what other terms of the statute would you have us look at? Well, as the court was suggesting before, there is a statutory definition of the term employee which does not encompass or indicate Let me help you. How about regularly scheduled? How about that? Regularly scheduled? Because that phraseology appears in the statute. That's what the legislative history seems to be talking about when it talks about people who work a 40-hour week. Maybe it's not the term employee that we should be focusing on. Maybe it's the terminology regularly scheduled and that only somebody who works a 40-hour week is considered to be a regularly scheduled person. Yes, that's a possibility. Is there anything to support it? If you're regularly scheduled, if I'm regularly scheduled to work 3 days a week from 9 to 5, am I not a regularly scheduled, working during a regularly scheduled 8-hour period of service? I work Monday, Tuesday, and Wednesday, 9 to 5. Do I not fall within someone who performs work during a regularly scheduled 8-hour period of service? There's no clear answer to that in the legislative history. I think the question is... But there is a clear answer. It has to be that there's a clear answer to it in the legislative history. And the legislative history says regularly scheduled means 5-day work week. That's your argument. I would submit that, yes, I would love it if we could win with that. But what's the matter with that? You say you don't like it, you know? It's the only support you've got. I do like it. But I guess, and I hope I don't shoot myself in the foot, but the law as we understand it is that the statute has to have a gap in it. Not just looking at the statutory text, but also the legislative history, other statute canons of statutory construction. It has a gap in it. The precise question that the plaintiffs have put here, does this statute cover part-time employees, is not answered by the statutory language. He says it is, because it covers all employees. It includes a genus, so are you saying that we don't necessarily construe a genus as including its species? Only if we assume that the answer to the part-time question is within the term employee, and respectfully, Judge Dike, is that the answer to this is in this sort of schedule idea of all employees, but they have different times that they work. Temporary employees who might be there for 30 days, as Judge Mischel suggested, may or may not be within the term employee, but we don't know because Congress hasn't indicated that they meant anything. So you don't think, you wouldn't say that part-time employees have a regularly scheduled eight-hour period of service, if they're working eight hours a day, if they're scheduled to work eight hours a day? Well, it's our argument, and it has been in our brief, that in 1965, at the time, eight hours a day is indicative of a typical full-time schedule. Your argument has to be, look at the legislative history. It says regularly scheduled five-day work week. That means they've got to work five days. I'll go ahead and agree with that. Well, there is an answer to that provided by the other side, which is this is a reference back to the Postal Service Statute, and when we get into that, it gets a little more complicated. But let me ask you, would OPM be within its purview as acting reasonably if they had had a regulation that excluded full-time people, that said that this provision only applies to part-time employees? I believe no. They would not? They would not have acted reasonably. Why not? Because there are some fairly clear indications in the legislative history, and this tracks back to the 1965 Act, that these were intended to cover full-time people exclusively. And that is predicated on an understanding that the Postal Service's pay scales, in terms of substitute employees, whatever, dovetail part-time? No. Why do we take the fact that they said it's just like the regular Postal Service employees? Don't we have to assume from that that in order for that to be relevant, the regular Postal Service employees had two classes, part-time and full-time? I think that the Comptroller General, in that opinion, might have been drawing that distinction, but I don't believe it's clear from the decision. Whose decision? Are we talking about the Court of Claims? I'm sorry, I'm talking about the Comptroller. I thought you were referring to the Comptroller General's 1966 decision. Right. And in that, there are two pieces of legislative history that he, I believe, cites. I don't know that the simple mention of, these benefits are supposed to be the same as the ones provided to regular Postal Service, necessarily ropes in this complicated analysis that the plaintiff appellants have put forward as to the functional equivalence between regular, full-time regular hours and substitute employees as opposed to full-time and part-time federal employees. It's possible, but there's no indication in the Comptroller General's opinion that they went that far. I think the Comptroller General relies more on the general statements in the legislative history, about five hours, I'm sorry, five days a week, eight hours a day. Is it not the premise of Chevron that the Congress expressly or by implication has delegated to the administering agency to decide who gets whatever is to be gotten and who doesn't? And if that is the premise, where is there any indication in this statute that Congress wasn't trying to decide itself but was simply handing off the responsibility to the Civil Service Commission to decide who would get premium pay for Sunday work and who wouldn't? The answer to that lies in, does the statute answer the precise question at issue? And our response, our position is that the simple use of the term employee does not answer... No, no, no. The statute could have said, the Civil Service Commission, later OPM, shall issue regulations classifying people as to whether they'll get premium pay or not. It could have said that explicitly. Or it could have implicitly made it clear, we in Congress are not deciding this. This is too hard for us or we don't have time or something. So it's up to the administering agency to draw these lines. Now, I don't see in this statute any hint of either an express delegation of the line drawing power to the Civil Service Commission or implied delegation. Do you? I would suggest that under the applicable Chevron analysis, that we need to search for what I said was the gap in the statute. That there is something that Congress hasn't spoken to, hasn't been clear about, in that case, the question the plaintiffs are putting towards this court. And if the statute doesn't answer it, then yes, the agency is charged with the responsibility of filling in that gap. If the statute had said some employees will get premium pay, it would be a very strong basis for saying they intended a Civil Service Commission, later OPM, to decide who gets it, who doesn't get it. But when it simply says employees, I'm talking about 41 now, looks like that means all employees, everybody who gets a paycheck, whether they work full-time, part-time, double-time, daytime, nighttime, whatever. I would suggest that the 5541 definition of employee is essentially, reads employee means employee. It's circular. It doesn't provide any meaningful enlightenment on the issue. But the common law definition of employee would include part-time employees, wouldn't it? Well, the dictionary definition does not. No, common law. Why doesn't the dictionary definition include everyone? It doesn't exclude anyone. I mean, you start off by assuming everyone's included in this group. It's the genus. So if you don't exclude a species, all species that fit in that genus are covered. I think the problem lies in assuming that Congress made that assumption. But the trouble you have is that there are a number of Supreme Court cases, for example, under the FELA, construing the term employee and saying that if Congress uses the term employee, absent some indication of the contrary, we assume the common law definition. And the common law definition has to do with control and ability to direct. It doesn't have anything to do with full-time versus part-time, right? I believe that, yeah. So under the common law definition, a part-time employee is an employee. And since Congress just used the term employee, there's no indication that they intended it apart from the common law definition. That's your problem with the term employee. That's why I suggest to you you're focusing on the wrong term. You're better off if you look at regularly scheduled. I apologize if I've been unclear. We've been trying to say that focusing on employee is the incorrect thing to do. And more specifically, what Judge Michel suggested when my opponent was up here is that it's not sufficient to simply look at the statute and make that presumption but rather test it with other things. You're not addressing my point. My point is that you are addressing the wrong terminology. You have a very difficult time with the word employee. It includes part-time and full-time under the common law definition. The cases say you use the common law definition unless Congress departs from it. Your argument ought to be, okay, even if that's right, the statutes require regularly scheduled. That's an ambiguous term. And the legislative history suggests that regularly scheduled means five-day week. We would like to make that argument. Let me ask you, you started before talking about, okay, we think there's some ambiguity and there's a gap and OPM is going to run in and fill the gap. Is there a job to fill a gap by trying to figure out what Congress really meant or is there a job filling a gap saying Congress delegated to us to draw the lines and here's how and why we're going to do it? I think it's to figure out what Congress meant, and that's what they did in this case. Why are they any better at that than the Comptroller General or Judge Basquiat or the three of us? That doesn't implicate the expertise of OPM or the Civil Service Commission. It's not a matter of arcane personnel policies. It's a matter of what one word in a statute means. Congress has specifically delegated rulemaking authority to OPM. My point is it doesn't turn on rulemaking authority. It turns on statutory construction, which is not a matter of expertise for Civil Service Commission or OPM. It's our position that under the applicable law where there's rulemaking authority granted to an agency with respect to a specific statute as there is here, then yes, they do have that authority to fill in these gaps, and they're not only empowered but supposed to exercise it. All right. Thank you, Mr. Hearns. As a final comment, Judge Dyke, I would like to point out that Section 5546 pertaining to night differential uses the same terminology for regularly scheduled and part-time employees have always received night differential under the statute, and that's never been in question over the decades. But that doesn't have the same legislative history, right? No. That was a 1945 act that gave them the night differential, but I think the terminology that we see today, the regularly scheduled, comes from the recodification in 1967 and not necessarily 1966, if I may. I believe, and I may be wrong, when they recodified in 66, they redid the language and added regularly scheduled into night differential, to the night differential, but I may be wrong. I'm sorry? Finish your answer first. But I think if you are going to look at the legislative history, and if you assume that the controller general is correct that Congress intended to give to civil service, classified employees, as it were, the same benefits they gave the year before to postal employees, where this whole case went wrong from the very start was the controller generals equating substitute employees with hourly rate regular, with part-time employees. Under the postal service statute, when you look at regular, a regularly scheduled employee, there were two kinds of regular employees. Those who had a regular work schedule of 40 hours, 8 hours a day, and a regular work schedule of up to 40, those were the up to 40 hours a week, and that would include the part-time employees in the postal service, who had a pre-set work schedule. So if Congress is legislating in 66 based on giving the same benefits they gave to postal service workers the year before, and using as common parlance as regularly scheduled, in the 65 law, Congress said explicitly what it meant by regularly scheduled. Those people who had a pre-set work schedule in advance, a certain set number of hours that they worked, or when they worked, and it would include employees, including those who worked up to 40 hours a week, which encapsulated all the part-time employees who had a pre-set work schedule, as opposed to substitute employees, whose work schedule may be nothing one week, may be part-time the next week, may be full-time or even longer than full-time the following week. You can't equate, the controller general could not possibly have properly equated part-time employees with substitute employees, because part-time presumes that you have a regular number of hours scheduled that you work, and substitute is not. That seems to be relying on the legislative history, so do you agree that the term regularly scheduled is ambiguous? No. No? No, from having worked with employees over, I've worked with weather service employees and other civil service employees for nearly 30 years, and negotiated their work schedules, agreed their work schedules, arbitrated their work schedules. I had another case before the Court of Claims 20 years ago with the Gahagan case, which talked about what a regularly scheduled work week was for weather service employees, and it's that which is set in advance. It was Gahagan versus the United States, I think it was about 1996. As a matter of fact, can you affirm for us that the plaintiffs in this case receive every kind of premium pay in this subchapter except Sunday premium pay? Well, I don't think they qualify for hazardous pay by the nature of their duties, and they're not on schedule. They work on a holiday or at night. Oh, yes. They get the special holiday premium or nighttime premium. Yes, they do. But they don't get the Sunday. That's correct. All right, well, we'll take the case under advisement. Thank you. Thank you. All rise.